Council, you may proceed. Thank you, Your Honor, and may it please the Court. My name is Patty Goldman. I represent the farmworker and health advocates in this case. In this mandamus action, we're asking the Court to order EPA to issue a final decision on our 2007 petition to stop uses of chlorpyrifos that harm children. This morning, I would like to address three issues that are relevant to this Court's balancing of the factors set out in the track case, which guides this Court's analysis. First, the unreasonableness of the delay. Second, the health risks at stake. And third, the prejudice to interest from the delay. Turning first to the unreasonableness of the delay, the track factors direct the Court to look at this factor in two ways. One, in connection with congressional intent, and the second, in connection with the task at hand. Counsel, asking for a mandamus for a federal agency is a pretty tall order, and it's not granted very often, as you're well aware. The closest one I found was eight years, and here we are about seven years delay, is that correct? We're approaching eight years in September. So you're bringing yourself within that eight-year case, which one was it? Your Honor, there's actually a four-year case. Telecommunications. The American Rivers case was a four-year case, where the Court there set a petition. It was a petition to protect endangered salmon from a dam, and the Court said four years was too long in that situation. There are other cases where the Courts have said the delay should be measured in months, not years, when human health is at stake. May I ask what seems to be a timing question? If you follow this chronology, we now get to the current time, where my understanding is that EPA has now or previously sent a preliminary final ruling, and then the public comment period on that just closed. Is that correct? Yes. My question is this. If we had been here a year ago, and as you were before another panel at a different time, we might have had a different situation. Now we're here. It's June. The public comment period just closed. Would we appropriately give the EPA some time to take that plus the preliminary decision, meld the two together, and issue a final decision? Isn't that kind of what we're asking at this point? Yes. So it was at the end of last year where EPA issued its revised human health risk assessment, which is the compilation of all of the scientific review that has been done over these years to respond to the petition. And then EPA has issued a provisional response to our petition based on that, which it says will be its response unless it changes its mind in response to comments. And the comment period closed when? The end of April. End of April. So now we're one month out. We'll have to obviously ask the EPA about this. But we're one month out from the public comment period, and the question is they've said September. Is that right? That they would probably be able to issue? No. The last date they gave us was by the summer, and so our petition asked for July 1st because that seems to be by the summer. Now in their latest communications they're saying they're not sure that they will make that deadline, but they haven't given us an alternative timeline. So shouldn't we, in trying to assess this instead of taking all this sort of globally and in a broad sense, really look at where are we now and should a mandamus issue or some other kind of order that would bring this all to a close? Yes, Your Honor. I think that would be appropriate. And where we are now in contrast to the prior proceedings is EPA had said previously this is very complex. We need to conduct various risk assessments. We need to seek review by our scientific advisory panel. That's all been done. The last scientific advisory panel released its report about three years ago, and all of the scientific work has been done. It's now up to the leaders and the officials to make the policy choices. Counsel, are you making any allegation of abuse or misconduct by the agency? No, we have never made any allegation of abuse. Just slow bureaucracy? Yes, in light of what's at stake. And that is something else that I'd like to point out that is different than when we were before the court two or three years ago, which is EPA has reviewed the science we've put in front of them about neurodevelopmental damage to children from exposures in utero, and it has agreed with what we have been saying all along, which is this pesticide causes serious damage to children's brains, like reduced IQ, reduced working memory, attention deficit disorder, the types of things that are every parent's nightmare. And not only has it found that these effects are linked to chlorpyrifos, but it has found that they are caused at exposures that are below its regulatory endpoint. This is an important fact here. EPA has been regulating to a target designed to prevent acute poisoning, but these mothers were exposed to far less, a fraction of that level, and their children had these impacts. So we're talking about serious health risks, and in the face of congressional mandates in the Food Quality Protection Act, to protect children from neurological damage from pesticides. Well, they said when they missed the February deadline, 2014, that one of the reasons is in a way what you're talking about, and that was they needed to update serious human health risks, and you didn't seem to contest that that's a legitimate reason in your briefing, correct? Well, we do believe they needed to conduct the scientific analysis that they conducted. It didn't need to take that long. They could have started earlier. My question comes back to where we started then, is given where we are now, what remedy are you asking? And if you want a mandamus, are you saying we should issue a mandamus in, say, July 1? Well, that is what we asked when we filed our petition, but it would be more realistic to give them more time now. What we did when we filed our petition was try to hold them to the date they had given us, because they've given us dates starting with November 2011 up until February 2014, which was the date that they agreed to. I know they're not very good prognosticators. I guess they would agree to it. And keeping their promises. So we wanted this court to hold EPA to a date certain, and that is the most important thing for us is to finally get on with it. And obviously July 1 is coming soon, so it would make sense to move it to August or September 1. But that is only the beginning of the process. Once this decision comes out, further proceedings are required. If EPA grants our petition, then it will start revocation proceedings, which will take time. If it denies our petition, then the next step is for us to file administrative objections that go back to EPA. You need a final decision. We need a final decision. We are in legal limbo, and our whole mission here is to protect children from these types of harms, and our hands are tied. We can't do that until we get a decision here. You wouldn't necessarily be suggesting that EPA doesn't care about brain damage to children? I'm not saying anything about motives or whether they care. They're not taking steps to put these protections in place. Soon enough, and in fact their provisional response to us indicates that's not how they intend to proceed. It is our mission to try to make them. What should our test be? What's the rule that we should apply as to whether or not the time has come to issue a mandamus? Well, this court's analysis is guided by the track factors. The first factor is what is the reasonableness of the task at hand? And here, eight years is a long time. While they have said they needed time because of the complex scientific inquiry, they have done the science. They've done that work. But we do have to allow them some time to deal with the revelations that have occurred over this eight-year period, which has pushed them in different directions as the science has become more obvious. Yes, but they're also one of the other track factors directs this court to ask whether Congress has spoken in a way that is relevant on the speed with which EPA should undertake this task. And Congress did speak in 1996 when it unanimously enacted the Food Quality Protection Act. And what Congress did there is it directed EPA to protect children from all exposures to a pesticide, including pesticide drift, and to protect children against harms, and it specifically called out neurodevelopmental damage. And it directed EPA to do that in a 10-year period for all existing pesticides. It also directed EPA to have default assumptions that will prevent potentially harmful exposures while EPA is going through that process. And here, either EPA should be moving post-haste or putting extra protections in place to prevent those harmful exposures while it is undertaking its analysis. And so that's why we put the petition before the agency, and that's why we are anxious to get a date certain for a response so that they will respond, no more broken promises, and we can move on to the next step. Is this the kind of case that could possibly benefit from a session with our circuit mediator? Well, that is what the last panel asked us, and we tried. We've been in settlement negotiations before we've gone to court, after we've been in court, and deadlines have been missed. What we want is a date certain that is enforceable, and we have not been able to come to an agreement with an enforceable deadline. Thank you, Counsel. Okay, I'd like to reserve the rest of my time. Yes, you may do so, Counsel. Okay, thank you. We'll hear from the agency. Counsel, you may proceed. Thank you. Good morning, Your Honors. My name is Erica Zolioli, and I represent the Environmental Protection Agency, and with me at counsel table is Mark Diner of EPA's Office of General Counsel. And may it please the Court, the petition for writ of mandamus should be denied for three reasons. First, the petitioners have not shown under the track test that they are entitled to the extraordinary remedy of mandamus, where EPA is entitled to substantial deference in light of the absence of a statutory deadline to act on the administrative petition. Second, the time that EPA has taken to resolve the petition is, in fact, reasonable, and it is by no means egregious in light of the complexity of the scientific issues involved in this case and the fact that EPA's actions have been driven by principles of sound science. I think this is a pretty miserable record myself. I mean, when did Congress tell the EPA to get this done? Under the statutory scheme, there is no deadline. So EPA has no time frame in which they have to respond. And that's where, under the track test, the rule of reason, in our view, should be governed by what science does EPA have to address in resolving this. What did you tell the last Ninth Circuit panel that heard this case? On what issue, Your Honor? The last Ninth Circuit panel that heard this very case. What representation did you make to that panel? I believe myóI was not personally involved, but I believe myó I don't care about your personalóI'm talking about the government and the EPA. What representation did you make to the panel? My understanding is that EPA gave an estimate that it would be able to completeó That's the DOJ gave theó The DOJ, correct, gave an estimate of February 2014ó All right. By which it would respond to the administrative petition. And, yes, that time frame hasó And you busted that deadline. That's long past, hasn't it? Well, and I will sayó Do you call that reasonable? Yes, Your Honor. In light ofówe understand the Court's frustration, and we do regret that EPA's timetable has shifted, but there are several things that have happened since my colleagueó Well, a lot of things have happened, but a lot of things happened because of the delay. You know, I wasófrankly, I was just all ready to go with the petitioner, but the thing that stopped me now is it seems to me, as just McEwen's questions implied, I don't know, you seem to be close to coming up with a final result, right, after you consider the public comment?  On what date? I'm sorry? I can't give you the final decision by what date, I should say. I'm sure this is not going to go over very well, but we are not able to give a certain date as to when we can respond to the petition, but the date that I can give you is that in light of the closure of the public comment period on April 30th of this year, EPA has already done an initial look at the 900 or so comments and weeded out essentially which are the truly substantive comments that raise issues that EPA wants to address, and there are only about 50 of those. And EPA estimates that it should be, and I can commit to the court, that EPA will by the end of June, so June 30th, have completed its analysis of those comments, and what that deadline will enable the agency to do is to decide if its preliminary or provisional response, its sort of draft response to the administrative petition can still go forward, in which case there will be a fairly short turnaround time. Short turnaround time of what? Because at this point you've made a decision. You now have narrowed these hundreds of comments to a small number, and the only thing remains to be done is to say, does that somehow totally tip the decision, or you keep your same decision but say you considered the comments and you discount them away. Exactly, Your Honor. But the two different tracks that EPA can take are dependent on what is within those comments, and our expectation is that by June 30th, the first track would be to essentially continue on with the same draft response but finalize it, as Your Honor noted, with any additional response to comments that are raised. And how long would that take? That we expect EPA could still meet its goal of the end of the summer. Is that August 31st, September 30th? Give me a date. Mid to late September would be ideal. Is that the Washington, D.C. summer? Washington, D.C. summer. We kind of start into the fall out here by that point. We have Indian summer, so it goes really late. But no, I think the agency estimates that it would be able to turn around a final. In that sense, it would be a denial order for the petition. And then the second track? The second track would be if any of the comments raise issues that require EPA to revisit some of the analyses that it's completed. And in some of the preliminary look at these comments, there were a couple of substantive comments, and I would note that the petitioners themselves submitted fairly lengthy and highly technical comments, and EPA wants to give due consideration to all of the issues that are raised. But several of the commenters, for example, have raised questions about the computer model that was used in completing the revised human health risk assessment. And so if EPA has to revisit some of the analysis that it did in that piece of the set of ten issues that were raised by the petitioners in their administrative petition, the time frame for how EPA would have to complete that analysis is unknown until they see the extent that they might have to revisit. Okay, so let me give you a potential order of things and ask for your response. If you've indicated that by June 30th you're going to know, are you going path one or path two? If the EPA were to determine that it's going path one, which is same preliminary determination but we've considered the comments, you say you'd have that out by mid-September. So what would be wrong then with an order from this court saying that if you go path one, that the final decision must be issued by mid-September? Certainly we would be happy to submit a status update on June 30th. No, I'm asking you an order. That's not the question. See, we've been in status. The question is why not an order from this court and with the proviso that if there needed to be for extraordinary reasons of change, you could come back and ask. What would be wrong with that on number one? Well, certainly the bar for a mandamus order is extraordinarily high, and in light of where we are, we think that a formal order from the court would potentially undermine EPA's ability to follow what the principles of science would dictate in terms of how they consider them. That's just a bunch of words. I mean, they've been waiting eight years, basically. So what's wrong with an order that takes you at your word for option one with a potential out if you discover extraordinary scientific information that might require further detail? Is there anything wrong with that? That's basically saying you're going to do what you're going to do, right? Yes, and certainly the agency understands the process has been going on for a while, and I think the volume of the exhibits in our case show all the progress that EPA has been making. So my answer, the short answer is, okay, on option one that would be okay. Now let me go to option two. If at the end of June you decide you're going to go route two, you need some revisiting, what if the court were to order that at that point you provide the court with a status report with a detailed assessment of how long that would take? We could certainly do that, and we could also reiterate the offer that EPA has made repeatedly in the past to petitioners, which is to essentially issue final responses on those portions of the administrative petition that they have raised. EPA could finalize that portion, and then they could move forward with the administrative process while EPA continues to evaluate the issues that are subject to. Are there only three issues that are left? How many issues are left in this end of April comment? Those are the three toxicology issues. Three issues. Previously the EPA had issued in 2012 in July a response to the first set of six issues, and then in the summer of 2014 issued a response on the seventh issue. It is possible that if some of the comments would bridge or overlap with some of the issues that have already been addressed, so we can't certainly rule that out in light of all the additional science and the research that has been evolving over the years. There's certainly a lot more information. Let me understand your answer because I don't quite understand it. There's three issues to which the comments were directed that were just received. Correct. And then at the first part of your answer you said, well, in effect you could kind of split the petition, if you will, and you could issue a final decision on the remaining issues on which you've already exhausted all these other things. So is that what is on the table now is the possibility to split the petition, issue a final decision, and then have the three issues remain? Obviously EPA's preference would be to have all of the issues remain, and that's why EPA did not issue individual final orders in the first place. There is an efficiency to all involved to have all of the issues raised at once. Let me just go back because I'm still not quite getting an answer that I understand. Is your proposal still on the table to split the issues on the petition, three plus the remaining? I think that would be, in lieu of an order, that would be our preference, but it's really up to the petitioners if they would like to take advantage of that. We have raised this many times before as an option in light of their claim of prejudice. But then to the second part of my question, it did seem that you were also saying it's possible that these comments could spill over and amplify and or change the decision, or no? I don't know standing here today, and I think that's part of what the next 30 days EPA will be able to evaluate. To clarify one point, the extended public comment period that originally was supposed to be 60 days and then a request came in to extend it for an additional 45 days, which is why today I can't tell you the answer. We need a little bit more time. Wait a minute, didn't that end on April 30? It did, yes. Originally it was supposed to end in the middle of March or February. It was a much sooner time. Okay, but it is closed as of April 30, and now we're into June. So you've had four or five weeks. Yes, and they've done the initial triage. They're working their way back there at the EPA or regionally. That's correct. They have been looking at it, and that's why they were able to narrow down the original set of 900 comments to a much smaller set of truly substantive comments. But I just wanted to clarify that those comments are on the entire risk assessment, and the risk assessment addresses a lot more issues than just the 10 that were raised by the petitioners in their administrative petition, which is why the additional analysis and additional time are needed to really parse those out. With respect to the 10 you just referred to, are three of those the toxicology issues? Correct. The other seven have been resolved or are about to be resolved? Yes, so six were addressed in a partial response in July of 2012, and then the seventh issue, which was really a complex issue that touched on a variety of areas, was addressed in 2014. And of the original six, there was one that was raised solely under the Pesticide, Federal Insecticide, Fungicide, Redenticide Act, or FIFRA, and because of the statutory scheme, it was a final order. So that one is resolved. So if we move forward, it would only be on the remaining nine. But petitioners never sought review of that, so they raised the issue, got a denial, and never followed up on it. The other nine, however, would need to go through the administrative. All right, counsel, you've heard about option one, you've heard about option two. I'm going to ask you about the nuclear option, Washington, D.C. term. Suppose we were to issue from the bench today a grant of the writ of mandamus. What then? EPA would comply with whatever deadline the court sets. Obviously, that's truly an extraordinary remedy, as Your Honors have all noted. We know that. But it has been done in the past in certain cases, and the question which your opponent has raised is perhaps this is the case in which it should be done again. So my question to you is what is the impact of our granting the writ immediately? I think there are two potential impacts that the court should consider. The first would be that if the deadline, for example, were to say by, you know, in the next two weeks. Well, I'm just taking there. Didn't they give a July 1 deadline? Isn't that in this case? They raised that in their original petition, that there be a provisional response by the end of December and then a final order by July. I don't recall if it was July 1, but I do recall July. If the court were to order a mandamus, effectively EPA would have to deny, based on the information that they have, the administrative petition because they would not have the benefit of reviewing the additional comments to see if there was anything there that could give them a basis to grant in part or in all some of these issues. So really it's to the petitioner's detriment because right now EPA does not, as it said in its draft response, have sufficient information to grant their petition, their administrative petition. The second thing I would say, so there's the risk of having a smaller record, which brings me to then the second point is at that point EPA is making a decision, but information that is potentially relevant and analyses that are potentially relevant would not be before the court in any future judicial review matters that involve these issues because if they have to issue the denial of the administrative petition without having all the information, then what's left is an incomplete record. This is kind of a catch-22, which is, okay, now we have the record and then of course a petitioner, maybe not this petitioner, but some petitioner could come in and say, hey, you haven't considered all the relevant comments, therefore remand to the agency or whatever. So this kind of a game could, I don't want to call it a game, but this kind of process could literally go on forever and there would never be an end point. It could, but again, EPA is always bound by its legal requirements under the statutes to consider all the scientific variables, and so to schedule themselves around the whim of a petitioner as opposed to what they're required to do by law really undermines the ability of the agency to take these matters seriously. What if the third option is a combination of two and three, which is an order is issued, here's the date, but for extraordinary reasons the agency could come back to the court with a report as to why it's unable to meet the date. And that's where I think, Your Honor, it might be helpful for us to provide a status report after June 30th where we could explain where we are. The status report is, you know, then we're just further down the road and then you're where you are and then they don't get to respond. You see what I'm saying? We're just kind of like rolling this thing out. But at least at that point the time frame would be clear as to which track EPA is going to be following, and I just think at that time we'd be better able to give either an estimate. If you go option one, you have a date. If you go option two, you don't know your date yet. I know my time is up, but there's just one point that I wanted to respond to with the court's indulgence. There was a reference to studies that have shown neurological harm to children even at current exposures, and I just wanted to make the point clear that those studies are in fact epidemiological studies that related to individuals that were potentially exposed during a time when chlorpyrifos and other similar pesticides could be used inside the home. So those residential uses have now been canceled since the early 2000s, and so those concerns are no longer in place. If there are no further questions, we ask the court to deny the petition. Thank you, counsel. Ms. Goldman, you have some reserved time. Yes. I should ask, in light of what you've just heard, do you want to proceed to ask for what you asked for? Well, we will modify the July 1st date. Okay. I think what would be appropriate is for the court to order EPA to respond to our petition by September 15th and allow EPA to come back and say it does need more time. If EPA is inclined to review comments in our favor and to change its provisional response so that it would be inclined to grant it if it could do more scientific work, we will definitely want to accommodate that kind of a request. We'd be happy to work with them for that, but it would have to be a reasonable amount of time so that we can move on. But it seems to me that would be appropriate. It gives us the date certain that EPA can come and say, well, we've decided it's not going to be a denial of the petition or we're not sure and we need that more time. We can talk about it and we could work with them at that point. Would you respond directly to Judge McEwen's suggestions of Option 1 and Option 2? Yes. So Option 1 would be to give the September 15th date if EPA is inclined to deny the petition. But Option 2 doesn't give us a date certain. It doesn't seem to tell us when we would get our response, and our experience has been this dragged on. Well, Option 2 is a combination because we don't know what the action is going to be. But if it's Option 2, they would need to report by June 30th the proposed date with the detailed justification for that, to which presumably you could respond, and then the court would take action one way or the other. It could either say, well, it looks fine to go out 52 years, or no, it doesn't. We may want to hold you a little longer. Do you know what I'm saying? Is it if we just arbitrarily issue a date and they close the record, are you comfortable with that? Well, the record actually won't be fully closed. If they rule against us on the petition, we file administrative objections. We can put new evidence in then. They can do more review. Except for this. This may be a collateral consequence. In other words, say we issue an order saying EPA has to take final action by, we'll say September 1, right? So they take final action. They say, well, there are a number of comments we couldn't review because the court imposed deadline. Now, does that foreclose you from attacking their inability to review those comments? Well, given that our remedy is administrative objections that go back to EPA, that gives them another opportunity to address those comments. And that can be a review with a hearing. There can be new evidence. So it would start us moving in that direction, but it wouldn't be over yet. So I don't think because of the nature of this proceeding we would face that risk. For us, what's so difficult here is that Congress did direct EPA to protect children from this kind of harm. And while my opposing counsel has said that the studies are not relevant, that's not what EPA's findings say in the Human Health Risk Assessment. They say they're very relevant. They did what the scientific advisory panel directed, and they found this correlation from uses that are canceled, but not a pesticide that's been canceled. So it's very relevant. And what Congress said is children should be protected as fast as possible with a 10-day deadline that was over in 2006. Can I just ask one question on that point? You had said, well, basically the decision has been made on these other remainings other than the three toxicity issues. Is there some reason you wouldn't just want to get that going and have the final decision on that? Well, we certainly thought about that, but it's sort of an empty promise on their part. We didn't ask for responses to 10 arguments. We asked for a ban on this pesticide because of its hazardous effects. And at the heart of that is the effects on children and these neurodevelopmental effects. So if EPA has to protect children from exposures that are associated with these brain impairments, then it needs to have far larger buffers for drift. It needs to change all of the assumptions made throughout its Human Health Risk Assessment and underlying all of the responses that it's already given. They're all interrelated because the neurodevelopmental effects tell us what the regulatory endpoint must be. So we asked the court to give EPA a date certain to finally give us a response to this petition. Very well. Thank you, counsel. The case just argued will be submitted, and the court will adjourn.
judges: O'scannlain, Tashima, McKeown